IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TOMMY FERRELL,

                Plaintiff,

      v.

CAROLYN W. COLVIN,
Commissioner of
Social Security,

           Defendant.

CIVIL ACTION FILE

 NO. 1:15-CV-01295-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied his disability applications. For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **AFFIRMED**.

## I.    Procedural History

Plaintiff Tommy Ferrell filed applications for disability insurance benefits and supplemental security income on March 28, 2011, alleging that he became disabled on July 2, 2007. [Record ("R.") at 14, 187-99]. After his applications were denied

initially and on reconsideration, an administrative hearing was held on August 13, 2013.  [R. at 14, 29-85, 155-61].  The Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's applications on October 2, 2013, and the Appeals Council denied Plaintiff's request for review on April 6, 2015.  [R. at 1-6, 14-23].  Plaintiff filed his complaint in this court on April 23, 2015, seeking judicial review of the Commissioner's final decision.  [Doc. 3].  The parties have consented to proceed before the undersigned Magistrate Judge.

## II.    Facts

The ALJ found that Plaintiff has low vision in the right eye, hearing loss, osteoarthritis of the hip, hypertension, history of alcohol and drug abuse, and history of coronary artery disease. [R. at 16].  Although these impairments are "severe" within the meaning of the Social Security regulations, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 16-17].  The ALJ found that Plaintiff is able to perform his past relevant work as a cook, cook's helper, and kitchen helper.  [R. at 22].  As a result, the ALJ concluded that Plaintiff has not been under a disability since July 2, 2007, the alleged disability onset date.  [Id.].

2

The decision of the ALJ [R. at 14-23] states the relevant facts of this case as modified herein as follows:

The claimant alleges disability due to right eye blindness, hearing loss, history of gunshot wound which causes pain in the stomach, inability to lift any heavy weights, pain in the hands, pain in the legs with difficulty walking, and trouble with grasping and gripping. The claimant further alleges problems with depression and difficulty with focusing or concentrating, with racing thoughts and stress from being homeless.

The evidence of record establishes that the claimant has been seen and treated for multiple complaints, with an alleged disability onset date of July 2, 2007. However, there is no medical evidence in the record prior to 2011. When the claimant was seen at the Health Department for visual acuity testing on April 18, 2011, he was reported to have 20/100 vision in the right eye and 20/30 vision in the left eye. (Exhibit 1F).

A consultative evaluation report at Exhibit 2F from Dr. Bobby Crocker dated May 10, 2011, shows that the claimant denied abdominal pain with no gastrointestinal ("GI") complaints indicated. He did give a history of remote gunshot wound. He denied any left eye complaints. The claimant and the consultative examiner indicated

3

that visual and hearing loss on the right has been present since childhood. The claimant further reported bilateral knee pain with the left knee worse, as well as right foot pain upon standing for extended periods. The claimant also reported a history of cocaine and marijuana use and occasional alcohol use, but he denied use of cocaine in the last four years. Physical exam revealed that the claimant's vision in the left eye was 20/100. The claimant reported the inability to see anything with the right eye. His physical exam was otherwise within normal limits except for some mild tenderness in the bilateral knees. The claimant, however, had full range of motion in both knees. He could not hear whispered words in the right ear, but his hearing was acceptable with routine conversational speech. The claimant was diagnosed with right eye blindness by history, decreased hearing in the right ear, and status-post abdominal gunshot wound. Dr. Crocker further noted that the claimant did undergo significant abdominal surgery due to the gunshot wound, but the physician indicated that the claimant seemed to have done reasonably well in this regard. Dr. Crocker did not indicate any functional limitations evidenced by the exam, other than a minor knee impairment that was not disabling.

Emergency room records from Grady Hospital dated through September 8, 2011, establish that the claimant was seen for hypertension and lower extremity pain.

He was treated with medications.  The claimant had some reports of shortness of breath and was advised to discontinue smoking.  He was also referred for a hearing evaluation.  A physical exam was within normal limits, including normal respiratory findings.  (Exhibit 3F).

Emergency room records dated November 4, 2011, show that the claimant was seen for complaints of right thigh pain and a history of hypertension.  Blood pressure was reported as acceptable when the claimant was on medications as prescribed.  The claimant was observed to ambulate with a limp favoring the right side with complaints of pain.  He was treated with nonsteroidal anti-inflammatory drugs ("NSAIDS").  Of note, the emergency room treating source reported that she later saw the claimant ambulating in the clinic hall without a limp and with no pain.

Grady Hospital records contain an audiological evaluation report dated November 15, 2011, which showed mild to moderate hearing loss from 250-8000 HZ for the left ear and moderately severe mixed hearing loss for the right ear.  Speech discrimination ability was rated at 80% for the right ear and 84% for the left ear.  However, test reliability was noted as poor with the examiner indicating extremely inconsistent responses from the claimant.  (Exhibit 5F, page 9).  Visual acuity testing on December 14, 2011, showed the claimant with very poor cooperation.  The

5

examiner noted that the claimant "would not stop playing around" during testing. (Exhibit 5F).

A pulmonary functions test was conducted on December 22, 2011, and revealed poor cooperation from the claimant. Even with this, the claimant had 79% and 71% functioning which is near normal. FEV1 readings were found to be 1.79 (pre) and 1.92 (post) which are also near normal. (Exhibit 6F). The claimant still smokes, and the most recent evidence of record does not indicate that he has been regularly treated for chronic obstructive pulmonary disease ("COPD") or prescribed ongoing medications for COPD. (Exhibits 11F, 12F).

Grady Hospital psychiatric treatment notes dated through February 2012 show treatment for depressive disorder, NOS, but mental status exams were within normal limits. The claimant was noted on November 22, 2011, to have alcohol dependence. His overall complaints appeared to be situational, due to homelessness, a financial crisis, the death of his wife and mother, and his health problems, which grossly affect his mood. The claimant was also noted to have a prescription for glasses but no money to purchase the glasses. He was referred to United Way and the Lions Club for assistance in obtaining glasses. (Exhibit 7F, page 10). There is no indication that he followed through. However, the claimant apparently was able to afford smoking a

AO 72A

(Rev.8/82)

pack of cigarettes per day and drinking alcohol every other week, according to his reports of record. In an intake note dated August 4, 2011, the claimant reported that his appointment was made by his lawyer. The claimant stated, "I'm trying to get disability." When asked about his activities of daily living, the claimant reported trying to walk around, trying to eat, and picking up some kind of work. He reported that he lasted used alcohol "yesterday." He was diagnosed with depressive disorder, NOS, and his mental status exam showed fair memory and good concentration. The claimant's gait was also described as steady. Grady Hospital progress notes dated February 17, 2012, indicate x-ray evidence of right hip osteoarthritis treated with Tramadol and Tylenol and blood pressure at goal with medications. (Exhibit 11F, page 9).

The claimant was seen on April 24, 2011, after a fall, with complaints of chest pain. A cardiac workup revealed coronary artery disease with calcification of the left anterior descending coronary artery. On September 14, 2012, a cardiac scan revealed ejection fraction at 30% with left ventricular wall motion being normal. The claimant denied any shortness of breath, palpitation, or dizziness. Physical exam was within normal limits except some chest pain upon palpitation. The claimant's chest pain was felt to be musculoskeletal in nature. (Exhibit 10F, page 17). On January 16, 2013, the

7

claimant reported his right hip pain as tolerable. Ejection fraction evaluated on January 2013 was much improved at 55% to 60%, which is within normal limits.

Visual acuity testing on May 14, 2012, showed poor cooperation. It was noted that the claimant followed the light but that he would not respond to the examiner and stated that he could not see it. (Exhibit 10F, page 46). Clinical ophthalmology notes indicate that when the claimant was evaluated on October 29, 2012, he was able to mimic the examiner's movement in periphery without any problems and was able to put his head into the machine without assistance. The claimant stated that he was using his vision on the left to do these activities despite a notation of a secure patch on the left eye. This evidence is suggestive of the claimant having more visual acuity in the right eye than alleged. An ophthalmology clinic note dated April 29, 2013, indicates that the claimant was able to follow the target light but that he had a delayed reaction.

A psychiatric follow-up treatment note dated March 8, 2013, shows that the claimant focused on physical complaints. The psychiatrist noted that it was difficult to get the claimant to answer questions about his mental health. The claimant finally stated that his mood was not any worse. The treating source noted that the claimant's depression seemed to be situational. (Exhibit 10F, page 67). On May 17, 2012, the

claimant reported that every other day he cares for his grandchildren, ages three years and nine months.  The claimant also reported drinking one to two times per week, stating that he drinks when he can.  (Exhibit 10F, page 73).  The claimant stated on August 8, 2012, that he drinks "here and there," about a half pint per week.

Exhibit 11F contains progress notes from Grady Hospital dated July 5, 2013, which show that the claimant had no complaints except for some dyspnea but only with hills.  He also reported that he was out of hypertensive medication.  His hip pain was tolerable.  Physical exam was within normal limits except that the claimant was noted to have a limping gait and using a cane.  The claimant stated that he has not been prescribed a cane but that he found it.  Comparison of x-rays from 2011 to the most recent in July 2013 shows no worsening of his hip condition.  (Exhibit 12F, pages 7, 8; Exhibit 11F, page 3).

The claimant was seen for hearing loss follow-up on April 17, 2013, with no worsening of his hearing.  The claimant refused recommended surgical intervention for his hearing loss.  His speech recognition score was 100% correct per ear at a presentation level of 80dBHL.  Test reliability was rated as fair.  The claimant was advised of Social Services to help with obtaining hearing aids through Georgia Lions Lighthouse. The claimant complained about financial constraints regarding his portion

9

of the cost, but he continued to afford his smoking habit and alcohol use.  The claimant was able to hear normal tone at the administrative hearing and also during an interview with a  State Agency employee at Exhibit 6A.  The preponderance of the evidence further shows no problems communicating with treating sources throughout this record.

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.    Standard of Review

An individual is considered to be disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. at 1440. "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving his disability. See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he has not engaged in substantial gainful activity. See id. The claimant must establish at step two that he is suffering from a severe

11

impairment or combination of impairments.  <u>See id.</u>  At step three, the Commissioner will determine if the claimant has shown that his impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  <u>See</u> <u>Doughty</u>, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  If the claimant is able to make this showing, he will be considered disabled without consideration of age, education, and work experience.  <u>See id.</u>  "If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work."  <u>Doughty</u>, 245 F.3d at 1278.  "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work."  <u>Id.</u>  If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  <u>See</u> 20 C.F.R. §§ 404.1520(a), 416.920(a).

## IV.    Findings of the ALJ

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2011.

2.     The claimant has not engaged in substantial gainful activity since July 2, 2007, the alleged onset date.  (20 C.F.R. §§ 404.1571, *et seq.*, and 416.971, *et seq.*).

3.     The claimant has the following severe impairments: low vision in the right eye; hearing loss; osteoarthritis of the hip; hypertension; history of alcohol and drug abuse (not material); and history of coronary artery disease.  (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.     The claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except with limited visual acuity of 20/100 in the right eye and 20/30 in the left eye, ability to hear normal conversation, but unable to perform jobs requiring fine hearing discrimination.

6.     The claimant is capable of performing past relevant work as a cook, cook's helper, and kitchen helper.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 C.F.R. §§ 404.1565 and 416.965).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from July 2, 2007, the alleged disability onset date, through the date of the ALJ's decision.  (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

[R. at 16-22].

## V.     Discussion

Plaintiff argues that the ALJ's decision denying his disability applications should be reversed.  [Doc. 17].  According to Plaintiff, the ALJ committed reversible

13

error when he found that Plaintiff had no severe mental impairments and no mental limitations. [Id. at 6-8]. Plaintiff also contends that the ALJ's residual functional capacity ("RFC") assessment was erroneous with respect to both mental and physical limitations and that, as a result, the hypothetical question that the ALJ posed to the vocational expert ("VE") at the administrative hearing was incomplete. [Id. at 8-11].

### A.    Mental Impairments

The ALJ found that neither Plaintiff's depression nor any other mental impairment was severe within the meaning of the Social Security regulations. [R. at 16]. The ALJ also did not include any mental limitations in the RFC assessment or in the hypothetical question to the VE. [R. at 17, 77-79]. Plaintiff argues that the ALJ's findings on these issues were erroneous. [Doc. 17 at 6-7]. In support of his argument, Plaintiff cites to records showing that he was diagnosed with and treated for depression. [Id.]. Plaintiff also contends that because the ALJ has on obligation to develop a full and fair record, he should have ordered a consultative psychological evaluation. [Id. at 7-8].

To the extent Plaintiff argues that the ALJ erred when he found that Plaintiff's mental impairments were non-severe, the court finds this argument lacking. "[A]n impairment can be considered as not severe only if it is a slight abnormality which has

14

such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (citation and internal quotation marks omitted).  Whether an impairment is severe is a threshold inquiry that "allows only claims based on the most trivial impairments to be rejected."  McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986).  However, the Eleventh Circuit has held, "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."  Heatly v. Comm'r of Social Security, 382 Fed. Appx. 823, 825 (11th Cir. 2010).  "[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two."  Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). In the present case, the ALJ found that Plaintiff's low vision in the right eye, hearing loss, osteoarthritis of the hip, hypertension, history of alcohol and drug abuse (not material), and history of coronary artery disease were all severe impairments.  [R. at 16].   Thus, even assuming that the ALJ erred in finding that Plaintiff's mental impairments were not severe, "the error was harmless because the ALJ concluded that

15

[Plaintiff] had a severe impairment: and that finding is all that step two requires." Heatly, 382 Fed. Appx. at 824-25.

The ALJ, as noted *supra*, did not include any mental limitations in the RFC assessment or in the hypothetical question to the VE.  In support of Plaintiff's argument that this constituted error, he points to evidence in the record showing that he was treated for depression by being prescribed Zoloft and undergoing months of therapy.  [Doc. 17 at 7; R. at 320, 324-41, 445-53].  Plaintiff also argues that the ALJ erred when he wrote that Plaintiff's depression "is situational due to the claimant being homeless with financial difficulties."  [Doc. 17 at 6; R. at 16].  Plaintiff contends that the ALJ did not cite to any source he relied upon when he reached this conclusion and that the ALJ did not explain the relevance of Plaintiff's depression being "situational." [Doc. 17 at 6].  For a number of reasons, the court finds Plaintiff's arguments unpersuasive.

The ALJ specifically addressed Plaintiff's depression and noted the lack of evidence regarding any problems that Plaintiff experienced with activities of daily living, social functioning, capacity for concentrating, or focusing on the task at hand. [R. at 21-22].  Although Plaintiff argues that the ALJ should have ordered consultative testing and evaluations to further develop the record with respect to Plaintiff's mental

16

limitations, he has failed to show that such testing was necessary.  "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record."  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  However, an ALJ is not required to order a consultative examination or other evidence "as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."  Ingram v. Comm'r of Social Security Admin., 496 F.3d 1253, 1269 (11th Cir. 2007).  The ALJ in the present case had enough information in the record to make an informed decision regarding Plaintiff's alleged mental limitations.

The ALJ, for example, noted Plaintiff's "demonstrated capacity for mental functioning while babysitting, which would require significant capacity for concentration and persistence consistent with an individual having no significant mental limitations, given the nature of the task and the age of the children." [R. at 22]. Substantial evidence in the record supports the ALJ's finding on this issue.  On February 23, 2012, Plaintiff reported to a treating source that on most days he watches his two grandchildren, ages three years and nine months.  [R. at 19, 319].  Three months later, on May 17, 2012, Plaintiff again reported to a treating source that he cares for his grandchildren every other day. [R. at 20, 446].  Plaintiff likewise testified

17

at the administrative hearing in August 2013 that he babysits his two grandchildren two or three days per week. [R. at 69]. Plaintiff's ability to babysit such young children many times per week for extended periods of time supports the ALJ's finding that Plaintiff's capacity for concentration and persistence is consistent with an individual having no significant mental limitations. [R. at 22].

Other evidence in the record supports the ALJ's decision. Plaintiff himself testified at the administrative hearing that he has no problems being able to focus or concentrate. [R. at 65]. Plaintiff stated, "I think I do that fine." [R. at 65]. Plaintiff also testified that because he is able to focus and concentrate, he watches television, enjoys listening to the radio, and "read[s] a lot." [R. at 65-67]. Plaintiff asserts that the ALJ erred when noting that Plaintiff's depression was "situational." [Doc. 17 at 6-7; R. at 16]. However, this is precisely the language used by a treating source who wrote in March 2013, "Depression mainly seems to be situational." [Doc. 17 at 6-7; R. at 16, 19, 441]. Similarly, in November 2011, a treating source noted that Plaintiff "reports being homeless and unemployed since 2007 and has been increasingly sad about that." [R. at 321]. It was not error for the ALJ to recite the observations of treating sources. And while Plaintiff points to the fact that he was prescribed Zoloft and underwent therapy for depression, he has cited to no evidence in the record

18

showing that he experiences significant functional limitations as a result of depression. [Doc. 17 at 7; R. at 320-22, 324-41, 445-53]. In fact, Plaintiff's self-described ability to babysit his two young grandchildren for extended periods of time and his "fine" ability to focus and concentrate show the exact opposite.

The ALJ cited to other evidence showing that Plaintiff's allegations of mental limitations were not consistent with the record. [R. at 18-19]. Plaintiff alleges that he became disabled in July 2007, but the ALJ pointed out that there is no medical evidence in the record prior to 2011. [R. at 18]. The ALJ also noted that although Plaintiff received psychiatric treatment from Grady Hospital for depressive disorder, "mental status exams were within normal limits." [R. at 19]. Furthermore, an intake record dated August 4, 2011, noted that Plaintiff's appointment was made by his lawyer and that Plaintiff informed the doctor, "I'm trying to get disability." [R. at 19, 336]. The ALJ explained in the same treatment records that Plaintiff's "mental status exam showed fair memory and good concentration, which is inconsistent with his allegations of mental limitations." [R. at 19, 331-40]. The ALJ also discussed a psychiatric follow-up treatment note dated March 8, 2013, which showed that Plaintiff focused almost exclusively on physical complaints. [R. at 20, 441-42]. The psychiatrist wrote that it was difficult to get Plaintiff to answer questions about his

mental health but that he finally acknowledged that his mood was not any worse.  [Id.].
These records constitute substantial evidence supporting the ALJ's findings regarding
Plaintiff's alleged mental limitations.

Plaintiff notes that during the administrative hearing, the ALJ admitted that he
had not "pick[ed] up on" any treatment or diagnosis of depression.  [Doc. 17 at 7; R.
at 41].  Plaintiff argues that because the ALJ was alerted to the diagnosis of depression
during the hearing, the ALJ should have ordered a consultative psychological
evaluation to "ensure[] the record was developed in regard to the limitations resulting
from Plaintiff's mental impairments."  [Doc. 17 at 7].  But as the Commissioner points
out, Plaintiff has cited to no legal authority requiring an ALJ to have extensive
knowledge of a claimant's record prior to a hearing.  [Doc. 18 at 8].  And the fact that
the ALJ did not "pick up on" Plaintiff's treatment or diagnosis for depression prior to
the hearing did not impose an obligation on the ALJ to order testing or evaluations.
The ALJ reviewed the medical evidence and provided an extensive description of
treatment notes, and the record regarding Plaintiff's mental condition was further
developed at the hearing through testimony from Plaintiff.  [R. at 63-67].  There was
enough evidence in the record for the ALJ to make an informed decision; accordingly,

the ALJ was not required to order a consultative psychological evaluation or other testing.  See Ingram, 496 F.3d at 1269.

In summary, Plaintiff notes that he has been diagnosed with and received treatment for depression.  However, the mere fact that Plaintiff has depression does not support his claim that this impairment resulted in functional limitations regarding his mental ability to engage in gainful activity.  See Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (noting that "the mere existence of these impairments does not reveal the extent to which they limit [the claimant's] ability to work or undermine the ALJ's determination in that regard").  "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).  In addition, "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912); accord Doughty, 245 F.3d at 1278.  The relevant regulations similarly provide that the burden is on the claimant to "furnish medical and other evidence" which proves that he is disabled.   20 C.F.R. §§ 404.1512(a), 416.912(a).  The fact that Plaintiff was diagnosed with depression and

21

was treated with therapy and Zoloft is not sufficient to carry this burden.  There is a

paucity of evidence showing that a mental impairment affects Plaintiff's ability to

perform work-related functions.  The court, therefore, concludes that Plaintiff has

failed to show that the ALJ erred when he did not include any mental limitations in the

RFC assessment or in the hypothetical to the VE.  Remand is not warranted on this

basis.

### B.    Physical Impairments

Plaintiff next argues that the ALJ's physical RFC assessment was not consistent

with Plaintiff's medically diagnosed impairments.  [Doc. 17 at 9-10].  The ALJ found

that Plaintiff had the RFC to perform medium work with some visual and hearing

limitations.  [R. at 17].  Plaintiff contends that he was more limited than the ALJ found

and that the RFC did not take into account Plaintiff's right hip osteoarthritis and his

use of a cane.[1]  [Doc. 17 at 9-10].  According to Plaintiff, the ALJ formulated the RFC

---

[1]Plaintiff also alludes briefly to his "cardiac condition," but the only evidence
to which he cites is a treatment note from April 2012 showing that he complained of
chest pain at that time.  [Doc. 17 at 10; R. at 375-76].  The ALJ discussed this
treatment note but inadvertently stated that it was from 2011 instead of 2012.  [R. at
19, 375-77].  The ALJ noted that Plaintiff denied any shortness of breath, palpitation,
or dizziness, that the physical exam was within normal limits except some chest pain,
and that this pain was felt to be musculoskeletal in nature.  [R. at 19, 389-94].  The
ALJ also noted that on September 14, 2012, a cardiac scan revealed ejection fraction
at 30% with left ventricular wall motion being normal.  [R. at 19, 377-79].  The ALJ

22

by erroneously relying upon the opinions of a non-examining review physician and Dr. Bobby Crocker, a consultative physician.  Plaintiff argues that the opinion of Dr. Crocker was vague and that he did not have the benefit of review of a substantial amount of medical records which documented Plaintiff's limping and limited mobility. [Id.].  Plaintiff also contends that the ALJ should have included these limitations in the hypothetical question posed to the VE at the administrative hearing.  [Id. at 10-11]. The court disagrees and finds that this aspect of the ALJ's decision was supported by substantial evidence.

With regard to the ALJ's RFC assessment of medium work, Plaintiff asserts that the ALJ's finding is not consistent with documents in the record showing that Plaintiff walks with a limp and has limited mobility.  [Doc. 17 at 10].  Plaintiff also contends that the ALJ did not properly consider his "medically necessary use of a cane."  [Id. at 9-10].  In support of his argument, Plaintiff cites to treatment notes from Dr. Moise Jean in November 2011 stating that Plaintiff reported leg pain and ambulated with a limp.  [Id. at 10; R. at 306-08].  Plaintiff also cites to treatment notes from Dr. Jean in

---

adequately evaluated the relevant records, and Plaintiff has failed to point to any evidence showing that he experiences significant functional limitations resulting from his alleged heart problems.  [Doc. 17 at 10].

23

July 2013 stating that Plaintiff limped and walked with a cane. [Doc. 17 at 10; R. at 455].

The treatment notes cited by Plaintiff were evaluated by the ALJ and specifically mentioned in his decision. [R. at 19-21]. The ALJ discussed other evidence in the record supporting his findings regarding Plaintiff's physical abilities. For example, although Plaintiff contends that his cane is medically necessary, the ALJ correctly noted that Plaintiff testified at the administrative hearing that he had not been prescribed a cane but that he found it. [Doc. 17 at 9-10; R. at 21, 45]. Plaintiff has not cited to any medical records indicating that he needed a cane. The ALJ also pointed to the opinion of non-examining state agency consultant Dr. Arthur Lesesne, who opined that Plaintiff could, *inter alia*, lift 50 pounds occasionally, lift 25 pounds frequently, sit for a total of six hours in an eight-hour workday, and stand and/or walk for a total of six hours in an eight-hour workday. [R. at 20-21, 365-72]. Although Plaintiff correctly notes that Dr. Lesesne did not have the benefit of the entire record, the physician adequately explained the reasons for his findings, and these findings were consistent with the medical evidence of record, including the opinion of Dr. Crocker. [R. at 275-81, 372]. The ALJ noted that Dr. Crocker found that besides Plaintiff's vision problems, his physical exam was otherwise within normal limits

24

except for some mild tenderness in both knees.  [R. at 18, 275-81].  Plaintiff had full range of motion in both knees, his gait was normal, he could get on and off the examining table without difficulty, and he did not require an assistive device to ambulate.  [Id.].  The ALJ pointed out that Dr. Crocker did not indicate any functional limitations evidenced by the exam, other than a minor knee impairment that was not disabling.  [Id.].  The ALJ gave great weight to Dr. Crocker's opinion.  [R. at 21, 275-81].

Plaintiff asserts that Dr. Crocker's opinion was vague and that more development of the record was necessary.  However, Plaintiff offers no authority supporting these conclusory assertions.  [Doc. 17 at 10].  The ALJ explained that Dr. Crocker's opinion was consistent with the opinions from the state agency physicians and with Plaintiff's self-reported activities of babysitting and picking up odd jobs.  [R. at 21, 275-81].  The ALJ also noted that Dr. Crocker reviewed the evidence of record at the time of the evaluation and provided a good recitation of the medical facts.  [Id.].  Although Plaintiff notes that many of the records in this case were from dates after Dr. Crocker's evaluation, the ALJ explained that "new evidence does not show any worsening of any medical condition to further reduce the claimant's overall residual functional capacity since Dr. Crocker's review."  [R. at 21].  The ALJ cited to the

25

evidence, discussed *infra*, that Plaintiff had made inconsistent presentations on the same day with respect to walking with a limp.  [R. at 21, 306].  The ALJ also pointed to a comparison of x-rays taken in 2011 to the most recent from July 2013 which revealed no worsening of Plaintiff's hip condition.  [R. at 21, 471].  Finally, as previously noted, Plaintiff's alleged disability onset date is July 2, 2007, but there is no medical evidence in the record prior to 2011.  [R. at 18].  A reasonable person would accept this evidence as adequate to support the ALJ's conclusion regarding Plaintiff's physical limitations.  See Lewis, 125 F.3d at 1440.

The ALJ also found that Plaintiff's allegations of limitations lacked credibility. One of the records cited by Plaintiff is from November 4, 2011, when he was seen by Dr. Jean for complaints of right thigh pain.  During the examination, Plaintiff was observed ambulating with a limp.  [R. at 306].  However, shortly after Dr. Jean completed his report, Dr. Anna Kho noted that she later saw Plaintiff "ambulating in the clinic hall with no limp and with no pain." [R. at 306].  Medical sources also found that Plaintiff gave inconsistent responses during an audiological evaluation report dated November 15, 2011, that he showed "very poor cooperation" and "would not stop playing around" during visual acuity testing on December 14, 2011, and that he showed poor cooperation during a pulmonary functions test on December 22, 2011.

26

[R. at 19, 310, 312-13, 316].  These records were cited by the ALJ in support of his decision, including his finding that Plaintiff's subjective allegations were not entirely credible.  [R. at 19, 21].

The ALJ relied upon the testimony from the VE in finding that Plaintiff is capable of performing his past relevant work as a cook, cook's helper, and kitchen helper.  [R. at 22].  Plaintiff argues that the hypothetical question posed to the VE was incomplete because it did not include more significant limitations.  [Doc. 17 at 10-11].  The court disagrees.  "[T]he ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).  But the ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported."  Crawford v. Comm'r of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).  When the ALJ solicited testimony from the VE, he posed a hypothetical question which included all of the limitations described in the RFC assessment.  [R. at 77-79].  Plaintiff makes no argument to the contrary.  [Doc. 17 at 10-11].  Plaintiff's contention regarding step four of the sequential evaluation is based solely on his assertion that the ALJ's RFC assessment was erroneous.  But as discussed *supra*, substantial evidence supports the RFC assessment.  Given the VE's testimony that a person with Plaintiff's limitations as found by the ALJ in the RFC

27

assessment would be able to perform his past relevant work, the court concludes that the ALJ's finding at step four was supported by substantial evidence. [R. at 22, 77-79].

## VI. Conclusion

For all the foregoing reasons and cited authority, the court concludes that the ALJ's decision was supported by substantial evidence and based upon proper legal standards. It is, therefore, **ORDERED** that the Commissioner's decision be **AFFIRMED**. The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner.

**SO ORDERED**, this 23rd day of August, 2016.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

28